UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

THE HANOVER INSURANCE COMPANY,     :
                :
     Plaintiff,         :
                :
v.                :   ACTION NO. 2:12CV698
                :
BLUERIDGE GENERAL, INC.,      :
                :
     Defendant.        :

## OPINION AND ORDER

This matter is before the Court on the Hanover Insurance Company's ("Hanover") Motion for Summary Judgment. (ECF No. 25). As surety for subcontractor Thayer Masonry, Inc. ("Thayer"), Hanover claims that Blueridge General, Inc. ("Blueridge") failed to pay the balance due Hanover for completing Thayer's work after the subcontractor's default. Blueridge withheld the funds partly due to Hanover's delays in completing the work, and partly to offset a balance due on another, non-bonded contract it had with Thayer. For the reasons set forth in detail below, the Court grants in part Hanover's motion, concluding that Blueridge may not set-off the non-bonded contract balance, but material facts in dispute preclude summary judgment for the balance of the claims.

## I.  FINDINGS OF UNDISPUTED MATERIAL FACT

On September 30, 2008, the United States Army Corps of Engineers awarded Blueridge a contract to construct the Visitor's Quarters at Langley Air Force Base ("Langley Project") in Hampton, Virginia. (ECF No. 26-3 at 13-14).[1] Blueridge subcontracted with Thayer to perform

---

[1] For simplicity, the contracting party for the Government will be referred to as Langley.

1

certain masonry work on the Langley Project ("Bonded Subcontract").   Pursuant to its obligations under the Bonded Subcontract, Thayer obtained performance and payment bonds from Hanover in the amount of $1,525,000.00. (See ECF No. 26-2).

Shortly thereafter, Blueridge engaged Thayer to complete another, unrelated subcontract at Western Branch High School ("Western Branch Project").   Hanover had nothing to do with the Western Branch Project, but both subcontracts included clauses allowing Blueridge to "withhold monies due or to become due on this Subcontract and any subcontract existing between the Contractor and Subcontractor to pay any such outstanding obligations and the cost to complete this Subcontract and any or all such other subcontracts." (ECF Nos. 1-4, ¶ 10; 26-15, ¶ 12).   Additionally, both subcontracts contained the following indemnification language:

> To the fullest extent permitted by law, this Subcontractor shall indemnify and hold harmless the Owner . . . and the Contractor . . . from and against all claims, damages, losses and expenses, including but not limited to attorney's fees, arising . . . out of the obligations herein undertaken by Subcontractor or arising . . . from the performance of the work by the Subcontractor . . . and will reimburse Contractor for any costs and expenses . . . incurred by the Contractor in responding to all such claims, actions or demands.   If requested by Contractor, Subcontractor shall defend any such claims, actions or demands at the cost and expense of Subcontractor.

(ECF No. 1-4, ¶ 38; and 26-15, ¶ 39).

In January of 2010, Thayer defaulted and Blueridge terminated Thayer's role in both the Langley and Western Branch Projects.   Blueridge then made demand on Hanover under the bonds, and Hanover agreed to complete Thayer's remaining work under the Bonded Subcontract. On March 19, 2010, the parties entered into a Memorandum of Understanding (the "Completion Agreement"), whereby Hanover agreed to complete Thayer's outstanding obligations on the Langley Project.   The Completion Agreement recited the amount payable to Hanover upon satisfactory completion of the Bonded Subcontract as $818,518.70, which it defined as the "Remaining Subcontract Balance."   The Completion Agreement also noted that the amount of

2

the Remaining Subcontract Balance was subject to any "add" or "deduct" change orders authorized by the Bonded Subcontract, which incorporated the provisions of the original agreement between Langley and Blueridge. (See ECF No. 26-6 at 1-2).

In order to perform its obligations under the Completion Agreement, Hanover subcontracted with Snow Jr. & King, Inc. ("Snow Jr.") to finish the remaining work on the Langley Project. According to Hanover, that work was completed on or about October 31, 2010 at a total cost to Hanover of $853,920.00. Although Blueridge takes issue with the timing and compliance with certain payment terms, there is no dispute that Hanover completed Thayer's work as defined in the Bonded Subcontract.

There is also no dispute that Langley has accepted the work and issued final payment to Blueridge on the Langley Project. To date, Blueridge has paid Hanover a total of $577,877.30 of the Remaining Subcontract Balance. The Company withheld the remainder as a result of multiple deduct Change Orders for delay, emergency contractor payments, and other charges totaling $105,946.02 (the alleged "Langley Damages"). (ECF No. 28 at 23). Blueridge also claims a right to set-off a non-bonded loss it suffered on the Western Branch Project, amounting to $133,220.50 (ECF No. 28 at 24). Finally, Blueridge claims a right to withhold the modest balance which would be due after these charges due to Hanover's failure to complete a new indemnity agreement extending its obligations to repair problems with allegedly defective block used by Thayer on both jobs.

During performance of both the Langley and Western Branch Projects, Thayer used masonry block manufactured by Tidewater Block, L.L.C. ("Tidewater"). (ECF No. 26 at 3). Although the block purportedly exceeded the required ASTM standards, it suffered from a condition known as "lime-pops." These "lime-pops" resulted in visible surface defects in the

3

block which were raised by Langley as defects prior to accepting the work. Tidewater repaired the block in 2010, and issued an extended warranty to Langley and Blueridge, covering block repairs until 2020. Following these repairs, Blueridge and Langley inspected and accepted the block, and both Blueridge and Tidewater received final payment.

In the underlying case, Hanover sued Blueridge for breaches of the Completion Agreement and the Bonded Subcontract, alleging its right to the withheld portion of the Remaining Subcontract Balance, amounting to $240,641.40. (ECF No. 1). Blueridge denied Hanover's claims, and filed a two-count Counterclaim asserting claims for setoff (for both the non-bonded Western Branch Project and Langley Damages), as well as indemnification.

Hanover now moves for summary judgment, requesting judgment as a matter of law that Blueridge may not use funds from the Remaining Subcontract Balance to set off Thayer's alleged debt on the Western Branch Project and that Blueridge's remaining setoff claim should have been raised as recoupment rather than as an affirmative claim. Hanover also contends Blueridge's claims are barred by the contractual statute of limitations set forth in the Performance Bond, and that Hanover has no further duty of indemnification beyond that which is spelled out in the Bonded Subcontract. In response, Blueridge argues that it has an absolute right to set-off the Western Branch debt from the Remaining Subcontract Balance, that the contractual statute of limitations does not bar its counterclaims, and that Hanover owes Blueridge a continuing duty of indemnification.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 requires the Court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v.

4

Catrett, 477 U.S. 317, 322-24 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). If there is no genuine issue as to any material fact, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp., 477 U.S. at 323.

The party seeking summary judgment has the initial burden of informing the Court of the basis of its motion and identifying materials in the record it believes demonstrates the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see Anderson, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

### III.   ANALYSIS

**A.   Setoff of non-bonded Western Branch debt and alleged Langley Damages.**

Hanover contends that it is entitled to summary judgment on Blueridge's setoff claims for two reasons.  First, as a performing surety, Hanover became subrogated to all rights of the bond obligee (Blueridge), including the right to apply the entire Remaining Subcontract Balance to satisfy its expenses in performing Thayer's original scope of work on the Langley Project. Accordingly, Hanover claims that Blueridge may not utilize any of those funds to satisfy an unrelated debt allegedly owed from Thayer to Blueridge on the non-bonded Western Branch Project.  Second, Hanover argues that the remaining damages sought by Blueridge in its setoff claim are not recoverable as a separate claim because they arise out of the Langley Project itself and would be properly plead only in an action for recoupment – not setoff.

> **1.   As a performing surety, Hanover is subrogated to Blueridge's rights in the Remaining Subcontract Balance.**

"[I]n the suretyship context, principles of equitable subrogation define the surety's rights to seek reimbursement for the discharge of its duties."  Hanover Ins. Co. v. Corrpro Cos., Inc., 312 F. Supp. 2d 816, 822 (E.D. Va. 2004).  Equitable subrogation "'is the substitution of another person in the place of the creditor to whose rights he succeeds in relation to the debt.'"  Id. at 823 (quoting Federal Land Bank v. Joynes, 179 Va. 394, 401, 18 S.E.2d 917 (1942)).  Because these rights are determined in part by the type of bond the surety performed, the distinction between a payment bond and a performance bond is crucial to determining whether Hanover is subrogated to the entire Remaining Subcontract Balance, or whether Blueridge may set-off the debt owed by Thayer on the Western Branch Project.  Nat'l Fire Ins. Co. v. Fortune Const. Co., 320 F.3d 1260, 1271 (11th Cir. 2003).

"Under a payment bond, the surety guarantees that subcontractors, laborers, and

6

materialmen will be paid in the event of the principal's default." Aetna Cas. and Sur. Co. v. United States, 845 F.2d 971, 973 (Fed. Cir. 1988). When a surety pays on the payment bond, it becomes subrogated to the rights of its principal, as well as to the rights of the laborers and materialmen. See United States v. Munsey Trust Co., 332 U.S. 234, 240-243 (1947); Trinity Universal Ins. Co., 382 F.2d 317, 320 (5th Cir. 1967). Indeed, "there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." Pearlman v. Reliance Ins. Co., 371 U.S. 132, 136 (1962).

A performing surety, however, assumes a greater responsibility and enjoys a correspondingly superior claim to the contract funds. "Under a performance bond, when the principal fails to perform its contractual duties, the surety can discharge its duties under the bond by taking over and completing the contract itself, or by tendering the costs of completion to the obligee." Hanover Ins. Co., 312 F. Supp. 2d at 822; see also Nat'l Fire Ins. Co., 320 F.3d at 1274-75. By completing performance, the surety becomes not only a subrogee of the bonded principal, and therefore a creditor, but also a subrogee of the bond obligee, entitled to any rights it has to the retained funds designated to complete the work. Trinity, 382 F.2d at 320. Indeed, as the Fourth Circuit has explained,

> [T]he obligee, upon default of the principal, is without doubt entitled to apply all moneys unpaid towards the performance of the contract, ignoring any assignments of the principal; and it necessarily follows that the surety upon performing the contract, being subrogated to the rights of the obligee, is entitled to the moneys unpaid so far as necessary to reimburse his loss.

Lacy v. Md. Cas. Co., 32 F.2d 48, 51 (4th Cir. 1929). By performing, the surety effectively relieves the obligee of the burden of completing construction, assumes the risk of completing it, and of any losses resulting from the insufficiency of the remaining funds.

7

"[Under] such circumstances, an implicit agreement exists that the surety has a right to all retained funds and any remaining progress sums, and the obligee does not possess a right to set-off." Nat'l Fire Ins. Co., 320 F.3d at 1271.

In this case, Hanover issued both a payment and a performance bond on Thayer's Subcontract with Blueridge. Upon Thayer's default, Blueridge requested that Hanover perform the remaining work on the Langley Project. Hanover agreed, and contracted with Snow Jr. to complete the job. Upon its completion, the Government inspected, approved, and paid Blueridge the full contract price. Under these undisputed facts, Hanover is a performing surety, and subrogated to the rights of its obligee (Blueridge) in the Remaining Subcontract Balance, and Blueridge may not set-off the unrelated Thayer debt.

Recognizing the limits of its rights under the bond, Blueridge maintains that Hanover accepted the terms of the original Langley Subcontract allowing for setoff by executing the Completion Agreement. As relevant here, that Agreement provides:

> Obligee shall pay to Surety the Remaining Subcontract Balance in accordance with the terms and conditions of the [Bonded] Subcontract, together with any additional Subcontract sums resulting from "add" change orders submitted by Completion Contractor or Surety . . . and subject to any "deduct" change orders duly authorized pursuant to the Subcontract . . . .

(ECF No. 26-6 at 2). The terms of the Bonded Subcontract also include a provision that allows Blueridge to "withhold monies due or to become due on this Subcontract and any subcontract existing between [Blueridge and Thayer] to pay any such outstanding obligations and the cost to complete this Subcontract and any or all such other subcontracts." (ECF No. 26-3 at 3). Accordingly, Blueridge contends that Hanover agreed to allow the Remaining Subcontract Balance from the Langley Project to set-off its costs from the Western Branch Project ($133,220.50). The Court disagrees.

8

The language in the Bonded Subcontract outlines Blueridge's rights, specifically against Thayer, to withhold money due to Thayer under the subcontract to pay the Western Branch debt (or any other debt due Blueridge from Thayer). This language refers to money due to <u>Thayer</u> under the Bonded Subcontract. Because Hanover, as a performing surety, is subrogated to all of <u>Blueridge's</u> rights to the Remaining Subcontract Balance, it is not subject to any setoff of the unrelated, non-bonded debt. As explained above, a surety that performs on a contract effectively confers a benefit on the obligee. Consequently, the surety becomes subrogated to the obligee's rights. <u>See Trinity,</u> 382 F.2d at 320.

Here, the Completion Agreement specifically outlines the expected relationship between Hanover and Blueridge. It clearly indicates the exact amount of the Remaining Subcontract Balance that Hanover would be entitled to upon "satisfactory completion of the Subcontract." (ECF No. 26-6). There is no dispute that the subcontract work was completed, accepted, and paid for by Langley. As a result, Blueridge had a right to the entire Remaining Subcontract Balance. As a performing surety, Hanover became subrogated to this right.

The language quoted above permitting "add" and "deduct" change orders in accordance with the Bonded Subcontract merely preserves both parties' rights to adjust the Remaining Subcontract Balance for changes in the scope of work as anticipated under the original contract between Blueridge and Langley. The Bonded Subcontract incorporates pages 1-150 of the Contract Documents between Langley and Blueridge. (ECF No. 1-4 ¶37). Those documents outline Langley's ability to issue change orders to the underlying project (i.e., the "add" or "deduct" orders referenced by the Completion Agreement). (ECF No. 26-3 at 112). These change orders would affect Hanover's rights to the Remaining

Subcontract Balance because they would affect Blueridge's right to the funds from Langley.

Hanover's status as a performing surety would entitle it to whatever rights Blueridge enjoyed with respect to the Remaining Subcontract Balance. If the parties intended Hanover to be responsible for Thayer's obligations on other contracts, however, the Completion Agreement would have to say so directly. Where the parties' legal rights are clearly defined and long established, any deviation from those rights by contract should not be inferred absent specific evidence of intent. See RW Power Partners, L.P. v. Va. Electric & Power Co., 899 F. Supp. 1490, 1502 (E.D. Va. 2012) (holding variation in Virginia's requirement of "material breach" to terminate a contract must be explicit).

Because Hanover performed its obligations under the Bonded Subcontract, and because the parties agreed at oral argument as to its status as a performing surety, the Court finds no genuine dispute of material fact on this issue. Further, given the language of the Completion Agreement, and Hanover's status as a performing surety subrogated to the obligee's rights to the Remaining Subcontract Balance, Blueridge's contractual setoff argument also fails, and Hanover is entitled to summary judgment on the portion of its claim seeking the funds withheld on the Western Branch debt.

**2.      Blueridge's Langley Damages setoff arguments are properly before the Court.**

Hanover also argues that the remaining portion of Blueridge's setoff claim (the alleged Langley Damages amounting to $105,946.02) is also barred because it relates to transactions intrinsic to the Langley Project and should have been raised as a recoupment defense. "Setoff is a counterclaim arising from an independent claim that the defendant has against the plaintiff. Recoupment is the right of the defendant to have the plaintiff's

10

monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the very contract giving rise to the plaintiff's claim." F.D.I.C. v. Marine Midland Realty Credit Corp., 17 F.3d 715, 722 (4th Cir. 1994) (citing First Nat'l Bank v. Master Auto Serv. Corp., 693 F.2d 308, 310 n.1 (4th Cir. 1982)).

Thus, Hanover is correct that Blueridge's claims regarding the setoff it is due for the alleged Langley Damages should have been raised as a recoupment defense. However, as Blueridge points out, the Company raised the offsetting Langley Damages in its Answer. The issues are therefore properly before the Court in the Answer and affirmative defenses. The offsetting Langley Damages involve a variety of smaller claims for delay, payment to emergency subcontractors, and other matters. Material issues of fact as to the nature and breadth of the alleged damages that Blueridge is entitled to recoup from Hanover preclude summary judgment on this issue.

**B.      Contractual statute of limitations.**

Hanover's second argument on summary judgment is that Blueridge's counterclaims are both barred by the contractual statute of limitations in Hanover's Performance Bond. According to that document, "[a]ny suit under this bond must be instituted before the expiration of two (2) years from [the] date on which final payment under the subcontract falls due." (ECF No. 26-2). Hanover argues that Blueridge, as a sophisticated entity, could have bargained for a lengthier limitations period or no period at all, and failed to do so.

Blueridge, on the other hand, argues that its claims are not barred by the limitations period set forth in the Performance Bond because of Hanover's subsequent promise to complete the Langley Project via the Completion Agreement. The Completion Agreement

11

has no enumerated limitations period, and as a written contract, would be subject to a five-year statute of limitations period under Virginia law. See Va. Code § 8.01-246 (2013). Even if the two-year period applies, Blueridge contends, its counterclaims were filed within two years of the date that final payment was due because Hanover never fully completed the Project and has still not submitted final close out documents. In other words, payment has never become due. As with Blueridge's offsetting claims for the Langley damages, material facts still in dispute bar summary judgment in favor of Hanover on its limitations defense.

## C.   Indemnification.

Lastly, Hanover seeks summary judgment on Blueridge's indemnity claims relating to the Western Branch Project as well as potential future damages arising out of the defective block utilized in the Langley Project. According to Hanover, no surety bonds were issued for the Western Branch Project, and neither the Performance Bond nor the Completion Agreement can be construed as imposing any kind of indemnification obligation on it. Further, no evidence has been presented to suggest that there are any existing construction deficiencies at the Langley Project. The Government has paid Blueridge in full for the Project's completion, and Tidewater has issued an extended warranty to both Blueridge and the Government, protecting against any deficiency in the block until 2020. If Blueridge required an extended indemnification agreement, Hanover argues, it could have contracted for one to meet its needs.

Blueridge contends that the broad indemnity clause in the Bonded Subcontract imposes an obligation on Hanover to protect Blueridge from the damages it has suffered on the Western Branch Project, as well as any potential damages arising from Thayer's use of

12

the defective block.   Additionally, Blueridge claims that it has already suffered loss or damage for which it is owed indemnification from Hanover.   Although issues of material fact clearly still remain, summary judgment is appropriate to the extent Blueridge seeks indemnity on the non-bonded Western Branch contract.   The Court finds as a matter of law that the Completion Agreement did not impose on Hanover any obligation to indemnify Blueridge in connection with any block issues on the Western Branch Project.   To the extent Blueridge claims a right and/or damages due to indemnity on the Langley Project, material issues of fact bar summary judgment.

## I.V.   CONCLUSION

For the reasons set forth above, the Court DENIES Hanover's Motion for Summary Judgment in part and GRANTS it in part, finding as a matter of law that Blueridge does not have a right to set-off the alleged Western Branch debt in the amount of $133,220.50 with funds from the Remaining Subcontract Balance.

/s/
Douglas E. Miller
United States Magistrate Judge
DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
August 28, 2013

13